UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH ASHLEY,<br><br>           Plaintiff,<br>vs.<br><br>CITY OF LAS VEGAS; LAS VEGAS MARSHALS; FREMONT STREET EXPERIENCE, LLC;<br><br>           Defendants. | Case No.: 2:16-cv-02053-GMN-VCF<br><br>**ORDER** |

Pending before the Court is the Motion for Preliminary Injunction, (ECF No. 8), filed by Plaintiff Joseph Ashley ("Plaintiff"). Defendant Fremont Street Experience, LLC ("FSE") filed a Response, (ECF No. 12), and Plaintiff filed a Reply, (ECF No. 19).[1] For the reasons set forth herein, Plaintiff's Motion for Preliminary Injunction is **DENIED**.

I. **BACKGROUND**

Plaintiff is a street performer who conducts a "comedy-escape" show for pedestrians at the Fremont Experience Pedestrian Mall ("the Mall"). (Am. Compl. ¶ 8, ECF No. 5). As a street performer, Plaintiff is subject to a number of restrictions set forth in Las Vegas Municipal Code § 11.68 ("LVMC § 11.68"). (*Id.* ¶¶ 13, 14). In the instant Motion for Preliminary Injunction, Plaintiff claims the following provisions of LVMC § 11.68 violate his First and Fourteenth Amendment rights under the U.S. Constitution:

---

[1] Plaintiff additionally filed a Motion to Reconsider the Court's refusal to review the Motion for Preliminary Injunction on an expedited basis. (ECF No. 10). This motion contained additional evidence that was unavailable when the original Motion for Preliminary Injunction was filed. Accordingly, the Court construes this motion to be a Motion to Supplement and grants it in that limited respect.

1. LVMC § 11.68.107(C)(2) prohibiting street performances within certain areas;[2]

2. LVMC § 11.68.107(C)(5) limiting the sound that street performers can emit;

3. LVMC §§ 11.68.108(A) and (B) designating certain zones where street performances are permitted from 3 p.m. to 1 a.m.;

4. LVMC § 11.68.108(D) allowing for the establishment of a lottery and rotation system for street performers to reserve the designated performance zones; and

5. LVMC § 11.68.108(E) requiring street performers to register with the City's Business Licensing Division within 72 hours after first using a designated performance zone.

## II. LEGAL STANDARD

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).  In general, injunctive relief is an extraordinary remedy that is awarded only upon a clear showing that the moving party is entitled to that relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A plaintiff seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.  In certain circumstances, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011).  "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the

---

[2] Plaintiff erroneously cites LVMC § 11.68.020 as prohibiting street performances within 100 feet of a stage during a "sponsored concert."  This restriction is actually contained within LVMC § 11.68.107(C)(2).

granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987).

In the First Amendment Context, the party moving for a preliminary injunction "bears the initial burden of making a colorable claim that [his] First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the [opposing party] to justify the restriction. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

### III. DISCUSSION

#### A. Colorable First Amendment Claim

Plaintiff claims that, as a regular street performer at the Mall, he has been subject to the restrictions set forth in LVMC § 11.68. (*See* Am. Compl. ¶¶ 13, 14).  A verified complaint can serve as an affidavit for temporary injunctive relief if it is based on personal knowledge and sets forth the requisite facts with specificity. *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985).  A complaint is "verified" if it contains a sworn verification or declares that it is true and correct. *See Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1122 (D. Nev. 2008).  Having considered Plaintiff's Amended Complaint,[3] declarations, and accompanying exhibits, the Court finds that Plaintiff has provided sufficient factual detail to demonstrate a colorable First Amendment claim against the challenged provisions of LVMC § 11.68.[4] Accordingly, the analysis turns to the reasonableness of those provisions.

---

[3] While Plaintiff's Amended Complaint was originally unverified, he later filed a declaration affirming the complaint to be true and correct. (Pl.'s Decl., ECF No. 24).  Accordingly, the Court considers Plaintiff's statements as evidence to support the preliminary injunction motion.

[4] In Plaintiff's Reply, he raises for the first time the argument that LVMC § 11.68.020's definition of street performer is unconstitutionally overbroad. (Pl.'s Reply 6:21–22, ECF No. 19).  This argument was not properly raised in Plaintiff's opening brief and therefore waived. *See Graves v. Arpaio*, 623 F.3d 1043, 1048 (2010).  Moreover, Plaintiff does not allege that he is erroneously classified as a street performer under this definition.  Therefore, to the extent the Court does consider this new argument, the Court finds Plaintiff has failed to establish standing to challenge this provision. *See Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) (citing *Friends of Earth, Inc. v. Laidlaw Envtl. Servsl*, 528 U.S. 167, 180–181 (2000)).

### B. Reasonableness of the Challenged Provisions

The Ninth Circuit has determined the mall to be a traditional public forum. *American Civil Liberties Union of Nev. v. City of Las Vegas*, 466 F.3d 784, 789 (9th Cir. 2006) ("ACLU II"). Although regulation of speech in a traditional public forum is disfavored, it is not impermissible. *Id.* at 792. "The government may place reasonable time, place, and manner restrictions on speech." *Id.* These restrictions must be content-neutral and narrowly tailored to serve a significant governmental interest, leaving open ample alternative channels of expression. *See Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984).

#### 1. Content-Neutral

The principal inquiry in determining content neutrality is "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Id.* An ordinance is "content-based if either the main purpose in enacting it was to suppress or exalt speech of a certain content, or it differentiates based on the content of the speech on its face." *ACLU II*, 466 F.3d at 789 (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429–430 (1993)).

According to the City of Las Vegas, the Mall was created "for the movement, safety, convenience, enjoyment, entertainment, recreation and relaxation of pedestrians." LVMC §§ 11.68.010(A), (D). The principal purpose of the Mall "is to serve as an economic and entertainment venue that will enhance the historical central business district." *Id.* § 11.68.010(D). The ordinances were amended in 2011 "to facilitate and enhance" this stated purpose. *Id.* § 11.68.010(E). In 2015, the ordinances were again amended to assuage "confusion as to where expressive activity is appropriate, particularly activity engaged in by

street performers, and to combat infighting and competition for the most desirable locations." *Id.* § 11.68.010(G).

Plaintiff argues that "disagreement with the message of street performers" and the "desire to enact prior restraints against them" were leading factors in the development of LVMC § 11.68. (Pl.'s Reply 8:19–22, ECF No. 19). In support of this "illicit motive," Plaintiff references excerpts from multiple City Council meetings discussing the ordinances. (*See* Council Meetings, Exs. 3, 4 to Pl.'s Reply, ECF Nos. 19-3, 19-4). Upon review, the Court finds that these excerpts fall well short of demonstrating that the "main purpose" in enacting LVMC § 11.68 was to suppress or exalt speech of a certain content. *ACLU II*, 466 F.3d at 789. Absent additional evidence to the contrary, the Court accepts the findings of LVMC § 11.68 regarding the challenged ordinances' purpose.

Plaintiff further argues that the ordinances are facially content-based, stating that the ordinances treat "certain individuals and certain speech differently than others, with content at the forefront." (Pl.'s Reply 13:18–20). In support of this conclusion, Plaintiff relies heavily on the ruling in *Reed*, which provides that "[s]ome facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015). Plaintiff fails to provide any argument as to how LVMC § 11.68 regulates *content* of speech based on its function or purpose. In fact, Plaintiff admits that his speech is "nearly-identical" in content to "sponsored" speech found in the Mall. (Mot. for Prelim. Inj. 9:10–12, ECF No. 8). While the challenged ordinances do regulate the source of expression— street performances—the ordinances do not distinguish based on the content of the message conveyed by the performers. Accordingly, the Court finds the challenged provisions to be content-neutral.

### 2. Narrowly Tailored to a Significant Governmental Interest

"A narrowly tailored time, place, or manner restriction on speech is one that does not 'burden substantially more speech than is necessary' to achieve a substantial government interest." *Berger v. City of Seattle*, 569 F.3d 1029, 1041 (9th Cir. 2009). "[T]he chosen restriction 'need not be the least restrictive or least intrusive means' available to achieve the government's legitimate interests. *Id.* However, the existence of "obvious, less burdensome alternatives" is a relevant consideration in determining whether the restriction meets this test. *Id.*

*i) The Noise Ordinance*

In general, the government has a substantial interest in protecting its citizens from unwelcome noise. *Ward*, 491 U.S. at 796. Notably, "the government may act to protect even such traditional public forums as city streets and parks from excessive noise." *Id.* FSE argues the ordinance regulates noise "no more than necessary to ensure that all performers may be heard while not creating an unenjoyable and unpleasantly noisy environment for visitors of the Mall." (Def.'s Response 16:24–26, ECF No. 12). Specifically, FSE notes that the ordinance only fully prohibits sound near the "celestial lightshow" and "sponsored concerts" by the FSE. (*Id.* 17:4–6). These events are main attractions and draw millions of visitors to the Mall each year. (Decl. Patrick Hughes ¶¶ 6, 8, Ex. B to Def.'s Response, ECF No. 13). Based on the evidence in the record, the Court finds that the noise ordinance is narrowly tailored to ensure visitors can enjoy both the Mall's main attractions and the street performances.

Plaintiff additionally asserts an "as applied" challenge, claiming that the Mall Security suppressed his speech while enforcing the noise ordinance. (*See, e.g.*, Am. Compl. ¶¶ 20–24). In particular, Plaintiff appears to take issue with the use of a decibel meter during his performances. (*Id.*). The Court does not find Plaintiff's argument persuasive, as the use of a decibel meter is both a necessary and relatively unobtrusive way to enforce the noise ordinance.

Notably, FSE submits video evidence of multiple interactions between Plaintiff and the Mall Security. (*See* Videos, Exs. F, J to Def.'s Response, ECF No. 14).  This video shows the Mall Security to be both discrete and respectful during and after Plaintiff's performance.  Accordingly, the Court rejects Plaintiff's as applied challenge for purposes of this preliminary injunction motion.

   *ii) The Buffer/Performance Zones and Lottery Registration System*

The United States Supreme Court has "recognized the legitimacy of the government's interests in 'ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks, [and] protecting property rights.'" *See McCullen v. Coakley*, 134 S.Ct. 2518, 2545 (2014) (quoting *Schneck v. Pro-Choice Network of Western N.Y.*, 519 U.S. 357, 376 (1997)).

In this case, the contested ordinances were enacted in response to issues concerning traffic congestion, monopolization of locations by street performers, and violence towards visitors and other street performers. (*See generally* Decls., Exs. B, D to Def.'s Response, ECF No. 13).  The restrictions therefore fall squarely within the government's significant interest in promoting safety and the free flow of pedestrian traffic.  With respect to narrow tailoring, the Court notes that the buffer zones only apply around "points of ingress and egress and natural pedestrian stopping points." (Def.'s Response 21:24–26).  Furthermore, the performance zones are required only during peak attendance times and still allow street performers to occupy vacant spots. (*Id.*).  Lastly, given the high demand for limited space, the lottery registration system[5] functions to deter infighting between street performers. *See* LVMC §§ 11.68.108(C), (D).  Accordingly, the Court finds these ordinances narrowly tailored to achieving the government's significant interest.

---

[5] The Court notes that the registration requirement may constitute a prior restraint on speech to the extent it applies to individuals who do not wish to enter the lottery system.  As Plaintiff does not contest participating in the lottery, the Court need not address this issue.

### 3. Ample Opportunities for Alternative Expression

Generally speaking, street performers are free to express themselves along the entire length of the Mall from 1:01 a.m. until 2:59 p.m. the next day. *See* LVMC § 11.68.108. During these hours, space is available on a first-come-first-serve basis. *Id.* Between 3 p.m. and 1 a.m., street performers remain free to express themselves but must do so within one of the 25–38 allotted performance zones. *Id.* While performers who register through the lottery have preference over reserved spaces, any vacant zones are available on a first-come-first-serve basis. *Id.*

Plaintiff argues that the restrictions do not allow him to reach his intended audience, and therefore fail to leave open ample alternatives. (Pl.'s Reply 7:20–22). Specifically, Plaintiff claims that "there are no vacant spaces" on any given night. (*Id.* 11:12–15). In support of this claim, Plaintiff provides a chart of lottery results, which purports to show that every space is filled each night. (*See* Lottery Results, Ex. 5 to Pl.'s Reply, ECF No. 19-5). This chart, however, fails to indicate whether the street performer assigned to a space actually occupied that space. Moreover, Plaintiff himself describes multiple nights in which he utilized a vacant space. (*See, e.g.*, Mot. for Prelim. Inj. 4:3–5). Accordingly, the Court finds that the challenged ordinances leave open ample opportunities for expression.

### C. Equal Protection Challenge

Under the Equal Protection Clause of the Fourteenth Amendment, no State shall "deny to any person within its jurisdictions the equal protection of the laws." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). The Equal Protection Clause does not forbid classifications, but rather "simply keeps governmental decision makers from treating differently persons who are in all relevant respects alike." *Id.* In general, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland*, 366 U.S. 420, 425–26 (1961).

Plaintiff argues that LVMC § 11.68 violates the Equal Protection Clause by placing restraints on street performers but not "sponsored concerts" or pedestrians engaged in "expressive activity." (Pl.'s Reply 5:1–5).  According to Plaintiff, both concerts and street performers have the identical function of entertaining "through the display of artistic performance." (*Id.* 4:23–24).  In making this argument, Plaintiff fails to establish that street performers are "in all relevant respects" the same as the other groups at the Mall.  To the contrary, the history of aggressive infighting, violence, and pedestrian obstruction renders street performers decidedly different from other groups at the Mall.  LVMC § 11.68 does not unjustly discriminate by creating restrictions that address issues specific to street performers.

Based on the foregoing, the Court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits—or else raise "serious questions" going to the merits—on either the First Amendment or Fourteenth Amendment claim.  As Plaintiff fails to meet the first element of a preliminary injunction, the Court need not address the remaining elements.

**IV.     CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction, (ECF No. 8), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration, (ECF No. 10), is construed as a Motion to Supplement the Preliminary Injunction and **GRANTED in that limited respect**.

**DATED** this ___27___ day of November, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Judge